MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

ROGER DINH (NYBN 4979274)
Special Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, CA 94612
    Telephone: (510) 637-3680
    Fax: (510) 637-3724
    E-Mail: Roger.Dinh@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO. 14-CR-00127 JSW |
|     Plaintiff, ) | |
| ) | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR SEARCH AND DISCLOSURE OF ELECTRONIC SURVEILLANCE** |
|     v. ) | |
| ) | |
| DEANDRE LAMAR WASH, ) | |
| ) | |
|     Defendant. ) | |
| ) | |

Plaintiff United States of America, by and through its counsel of record, Special Assistant United States Attorney Roger Dinh, hereby submits this response to Defendant's Motion for Search and Disclosure of Electronic Surveillance and respectfully requests the Court deny the motion in its entirety.

**INTRODUCTION**

Defendant moves pursuant to 18 U.S.C. § 3504(a) for an order requiring the United States to disclose information related to the use of electronic surveillance. Section 3504(a), however, governs only the illegal interception of <u>content</u> from phone lines; it does not govern the detection of non-content cellphone signals. No wire tap was obtained or installed in this case and no content was received by law enforcement, except pursuant to consensually monitored calls. Although not required by the statute, the United States further confirms that pursuant to a California Superior Court order, Sprint PCS provided GPS location data for cell phone number (415) 577-9035 -- Defendant's cell phone -- after the completion of the offense conduct alleged in the Indictment. The GPS information obtained assisted the officers in arresting the defendant. It has not led to any evidence that the Government intends to introduce in its case-in-chief. For all of these reasons, the Defendant's motion should be denied as moot.

**I.     FACTUAL BACKGROUND**

On or about February 5, 2014, a confidential informant provided information that the defendant, Deandre Lamar Wash, had a firearm for sale and provided Defendant's phone number (415) 577-9035. <u>Dinh Declaration in Support of Response to Defendant's Motion for Disclosure of Informants</u> ("Dinh Declaration"), Exhibit A. A commercial database linked that phone number to Defendant's name, social security number, and address. <u>Id.</u> It was also confirmed that Defendant was on felony probation for firearms and narcotics. <u>Id.</u>

On that same day, an undercover law enforcement officer ("UC") placed a recorded call to Defendant at the provided phone number. <u>Dinh Declaration</u>, Exhibit B. After discussing the firearm identified by Defendant as an "M1" rifle, Defendant stated he wanted $800 for the firearm. <u>Id.</u> On February 6, 2014, the UC and Defendant discussed on the telephone plans to meet later that day for the firearms transaction. <u>Id.</u> Later that same day, Officers observed Defendant arrive at the parking lot in a grey Toyota with two other individuals. <u>Id.</u> During the interaction between Defendant and the UC,

Defendant, seated in the rear, produced a rifle bag containing an M1 rifle. Id. Defendant then sold the firearm and 16 rounds of ammunition for $800 to the UC. Id. Following the operation, the UC confirmed the identity of Defendant. Dinh Declaration, Exhibit C. The firearm and ammunition transaction that occurred on February 6, 2014, was audio and video recorded. Id.

On February 11, 2014, the UC placed a recorded call to Defendant wherein Defendant stated: "I got another M1[,]" and "this little Tec." Dinh Declaration, Exhibit D. When asked how much Defendant wanted for the M1 rifle, Defendant replied "around the same price." Id. Defendant stated that the M1 was not his but he would try to do a "package deal." Id. At approximately 1:00 p.m. on that same day, the UC placed a recorded call to Defendant in response to a missed call from Defendant. Id. Defendant indicated he also had a "little 9 Beretta" and that it was $2,100 for all three firearms. Id. The UC and Defendant agreed upon $2,000 and met at a parking lot where Defendant arrived by himself in a Nissan vehicle later determined to be a rental car. Id. During the interaction between the UC and Defendant, Defendant showed the UC the Tech 9 firearm and the Berretta 9mm firearm. Id. Defendant then indicated to the UC that the third firearm was in the rear seat. Id. The UC observed a long object wrapped in grey clothing. Id. Upon seeing the muzzle of the rifle, the exchange was made for $2000. Id. Defendant told the UC that if he needed a magazine for the M1, that Defendant could get one. Id. The firearm and ammunition transaction that occurred on February 11, 2014, was audio and video recorded. Id.

That same day, on February 11, 2014, a judge from the Superior Court of California in the County of Alameda signed a court order for Sprint PCS to, among other things, "assist in the attempt to locate said telephone by use of GPS coordinates" associated with phone number (415) 577-9035. Dinh Declaration, Exhibit G. However, GPS location data was not initially received until several hours after Defendant had already sold the firearms to the UC. Dinh Declaration, Exhibits D and I.

On March 13, 2014, the Grand Jury returned a four-count indictment charging the defendant with two violations 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm, two violations of 18 U.S.C. § 922(a)(1)(A), dealing firearms without a license, and 18 U.S.C. § 924(d)(1), firearm forfeiture. Docket No. 3.

//

On March 18, 2014 with a federal arrest warrant in hand, law enforcement observed Defendant's vehicle within the vicinity of recent GPS location data for Defendant's phone. Dinh Declaration, Exhibits E, H, and J.  At approximately 9:45 a.m., Defendant was observed leaving a nearby apartment complex and walking towards his vehicle. Dinh Declaration, Exhibit E.  Officers attempted to take Defendant into custody but Defendant got into his car and sped away. Id.  Officers then pursued Defendant at a distance as he fled in his vehicle against oncoming traffic. Id.  Following him down a dead-end street, officers saw his vehicle on the curb, still running, with the door open and a broken water pipe beneath it. Id.  Subsequently, Defendant was located nearby and was taken into custody without further incident. Id.  A search of Defendant's vehicle revealed approximately 39.9 gross grams of marijuana, Defendant's cell phone, indicia of Defendant, and a rental agreement for the vehicle in the name of Ella Hanson (later determined to be his grandmother). Id.  Defendant was not charged with a narcotics offense, and his cell phone was not searched.  Later that day, Defendant was interviewed and stated that he did not know anything about any firearms. Dinh Declaration, Exhibit F.

## ARGUMENTS

### A.     Section 3504(a)

Defendant bases his motion 18 U.S.C. § 3504(a).  That provision does not apply.  Section 3504 relates only to unlawful eavesdropping, where the contents of phone calls are intercepted without the use of a warrant.  Here, Defendant makes no claim that conversations were intercepted; rather he asserts vaguely that electronic surveillance was used.  Defendant's motion should be denied because the detection of phone signals is not considered an "unlawful act" under Section 3504.

Under Section 3504(a), an aggrieved party may claim that certain evidence stems from an "unlawful act."  Once such a claim is properly made – through affidavits or other evidence – the responding party must "affirm or deny" the occurrence of the unlawful act.  An "unlawful act" is defined with reference to the Wiretap Act and means the "use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution." 18 U.S.C. § 3504(b).  Section 2510(5) only applies to devices used to "intercept" a wire, oral or electronic communication.  The term "intercept" requires that "contents" of a wire are acquired.

//

Here, Defendants' motion does not specify the type of electronic surveillance suspected. Further, the sole substantiation for the "concrete" claim of surveillance is that "[d]efense counsel has prior experience with cases involving cell phone records and knows that NEID and REPOLL numbers can and are used to determine cell phone locations." <u>Defendant's Motion for Search and Disclosure of Electronic Surveillance</u>, Pg 6. Because no "content" was intercepted here, his motion is not supported by Section 3504 and should be denied.

## II. Phone's Location Data Was Provided Pursuant to a Court Order

The United States confirms that GPS location data of Defendant's phone was provided to law enforcement by Sprint PCS pursuant to a Superior Court Order. <u>Dinh Declaration</u>, Exhibit G. The Court Order was signed February 11, 2014. <u>Id.</u> Notably, the charged offense conduct occurred under law enforcement surveillance, including audio and video recording of Defendant's dealings with the UC, all prior to the receipt of any GPS location data. Therefore, the GPS location data in this case is neither incriminating nor exculpatory. Although the GPS location data contributed to Defendant's arrest, Defendant's person cannot be suppressed. *See* <u>I.N.S. v. Lopez-Mendoza</u>, 468 U.S. 1032, 1039-40 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.") (*referencing* <u>Gerstein v. Pugh</u>, 95 S.Ct. 854, 865 (1975); <u>Frisbie v. Collins</u>, 72 S.Ct. 509, 511 (1952); <u>United States ex rel. Bilokumsky v. Tod</u>, 44 S.Ct. 54, 57 (1923)).

Defendant's motion reserves the right to move for an evidentiary hearing to determine "the extent to which surveillance tainted the commencement of the investigation of defendant herein, issuance of grand jury subpoenas, and the evidence which the government intends to present at trial."[1] The GPS location data in no way impacted the direction of the investigation and the United States does not intend to use any evidence obtained as a result of the GPS location data in its case-in-chief. For these reasons, no further hearing is necessary because there is no relevant evidence to be suppressed.

//

//

---

[1] Defendant's Motion, Pg 4, Line 14-17.

UNITED STATES' RESPONSE MEMORANDUM
Cr 14-00127-JSW

4

## III. CONCLUSION

No wiretap evidence was obtained in this investigation and no wire content was received except pursuant to consensually monitored calls. The United States has produced GPS data that was used to locate and arrest the defendant pursuant to a federal warrant. The United States does not intend to introduce any evidence in its case-in-chief that was derived from the GPS data. For all these reasons, Defendant's motion should be denied as moot and no further hearing is required.

DATED: April 24, 2015

Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
ROGER DINH
Special Assistant United States Attorney
UNITED STATES' RESPONSE MEMORANDUM
Cr 14-00127-JSW