# EXHIBIT A

**U.S. Department of Justice**                                   **Report of Investigation**

Bureau of Alcohol, Tobacco, Firearms and Explosives

| Title of Investigation: WASH, Deandre Lamar et al. | Investigation Number: | Report Number: 1 |
|---|---|---|

## SUMMARY OF EVENT:

CI CONTACT:  ATF confidential informant (CI) ▉▉▉ provided information to agents regarding the criminal activity of Deandre Lamar WASH (▉ 1986) and associates.

## NARRATIVE:

1. During a debrief of CI▉▉ by Special Agent (SA) Justin Quinn and Task Force Officers (TFO) Roger Lee and Ramon Jacobo, the CI identified WASH as a source for firearms.

2. On or about January 22, 2014, CI▉▉ provide information that WASH and 2 unknown male Blacks were driving around north Oakland in a Toyota Tundra with multiple firearms looking for family/friends of ▉▉▉ It was believed that they were attempting to intimidate ▉▉ who is currently in custody. Oakland Police Department (OPD) officers advised that WASH was on felony probation for firearms and narcotics.

3. On or about February 5, 2014, CI▉▉ provided phone number 415-577-9035 for WASH and advised agents that WASH had a firearm for sale.

4. A commercial database query was conducted for the phone number provided for WASH which showed WASH's name, social security number (▉-▉-9849), and address (▉▉▉▉, Emeryville, CA) linked to the number.

5. A review of WASH's criminal history showed that he is a 4 time convicted felon for firearms and narcotics violations.

## ATTACHMENTS:

California Department of Motor Vehicles photograph of WASH
Criminal history abstract for WASH

| Prepared by: Christopher BAILEY | Title: Special Agent, Oakland Field Office | Signature: C. Boun | Date: 2/7/14 |
|---|---|---|---|
| Authorized by: Darek G. Pleasants | Title: Resident Agent in Charge, Oakland Field Office | Signature: | Date: 2/9/14 |
| Second level reviewer (optional): Joseph M. Riehl | Title: Special Agent in Charge, San Francisco Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004) For Official Use Only

DLW-000001

# EXHIBIT B

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation:<br>WASH, Deandre Lamar et al. | Investigation Number: | Report Number:<br>2 |
| --- | --- | --- |

## SUMMARY OF EVENT:

PURCHASE: On February 6, 2014, ATF Task Force Officer (TFO) Ramon Jacobo and Special Agent (SA) Nathan Sanchez, acting in an undercover (UC) capacity, met with Deandre WASH, Samuel FREEMAN ( ) and Kenneth LEDBETTER ( ) to purchase a M1 carbine rifle.

## NARRATIVE:

1. On February 5, 2014 at approximately 7:05 p.m., TFO Jacobo placed a recorded phone call to WASH at phone number 415-577-9035. The phone number for WASH was previously provided by ATF confidential informant (CI) . The following is a synopsis of the phone call:

   a. TFO Jacobo stated that he was looking for "Dre" and WASH answered that was him.
   b. TFO Jacobo then stated "I heard you got one of them thangs for me." By this TFO Jacobo meant firearms.
   c. WASH replied "yup, you comin' out here?"
   d. TFO Jacobo and WASH discussed the firearm and WASH stated that he wanted $800 for it.
   e. TFO Jacobo asked WASH to text him a photograph of the firearm to which WASH replied that he could look up "M1" on youtube.

2. At approximately 7:14 p.m., TFO Jacobo received a phone call from WASH which he was able to partially record. The following is a synopsis of the phone call:

   a. TFO Jacobo and WASH discussed the firearm which WASH had said to look up.
   b. WASH stated "I had one before, but I cut the back piece off." It is believed that by "back piece" WASH meant shoulder stock.
   c. WASH further stated "it ain't got hella recoil or nothing. It's a chop though." The term "Chopper" is common street vernacular for assault rifles, referring to the sound it makes when fired rapidly resembling a helicopter.

3. On February 6, 2014 at approximately 10:16 a.m., TFO Jacobo placed a recorded phone call to WASH. The following is a synopsis of the phone call:

   a. TFO Jacobo and WASH discussed meeting later that day for the firearms transaction.
   b. TFO Jacobo asked WASH if he could put the firearm in a bag and have it cleaned up to which WASH

| Prepared by:<br>Ramon Jacobo | Title:<br>Task Force Officer, Oakland Field Office | Signature: | Date:<br>2/10/14 |
| --- | --- | --- | --- |
| Authorized by:<br>Darek G. Pleasants | Title:<br>Resident Agent in Charge, Oakland Field Office | Signature:<br>DGPL | Date:<br>2/12/14 |
| Second level reviewer (optional):<br>Joseph M. Riehl | Title:<br>Special Agent in Charge, San Francisco Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000027

replied yes.

4. At approximately 12:45 p.m., TFO Jacobo placed another recorded phone call to WASH. The following is a synopsis of the phone call:

   a. WASH stated that he was "up and movin' right now" and asked if TFO Jacobo wanted to meet in east Oakland.
   b. TFO Jacobo and WASH agreed to meet at the Fruitvale BART Station in 15 minutes.

5. For complete details regarding the phone conversations between TFO Jacobo and WASH referenced above, see Electronic Surveillance Evidence E-1.

6. Based on the information above, an UC operation was initiated during which TFO Jacobo and SA Sanchez, acting in an UC capacity, would meet with WASH in an attempt to purchase a M1 rifle. The following personnel participated in the operation providing cover for the UCs and conducting surveillance of the meeting: Resident Agent in Charge (RAC) Darek Pleasants, SA Chris Bailey, SA Andrew Williams, TFO Vinny Johnson, TFO Roger Lee, SA Mike Ramos, TFO Ryan Cates, SA James Talley, SA Danny Demas, TFO Steve Light, SA Kristin Larsen, and Technical Surveillance Specialist (TSS) Joe Arietta.

7. TFO Jacobo and the UC vehicle were equipped with audio/video recording devices and an audio transmitter by which the surveillance team could monitor the meeting. The following is a synopsis of the meeting. For complete details see Electronic Surveillance Evidence E-2.

   a. Prior to and after arriving at the target location, TFO Jacobo had several phone conversations with WASH determining where they were to meet. These conversations were captured on TFO Jacobo's recorder.
   b. At approximately 1:20 p.m., TFO Jacobo and SA Sanchez arrived at the target location and parked the UC vehicle.
   c. A short time later, TFO Jacobo observed WASH and two male Blacks (later identified as Samuel FREEMAN and Kenneth LEDBETTER) arrive in a Toyota Avalon bearing California license plate 7COW797. TFO Jacobo observed that FREEMAN was driving the vehicle with LEDBETTER in the front passenger seat and WASH in the rear.
   d. TFO Jacobo acknowledged the subjects and asked said "you, Dre" WASH who was sitting in the rear passengers seat opened the door and TFO Jacobo leaned in and said, "whats up with it, let see" WASH had a riffle bag in which he unzipped and took out a M1 carbine rifle and a high capacity magazine. TFO Jacobo told WASH it was Gucci, and signaled to SA Sanchez to open the trunk.
   e. TFO Jacobo also observed .30 caliber ammunition falling on the floor board of where WASH was sitting, and TFO Jacobo told Wash "I want all that" and told WASH to wrap the bag in a towel or a blanket. WASH took a white blanket which was on the ground next to him and wrapped the rifle case.
   f. TFO Jacobo retrieved ATF funds from SA Sanchez and exchanged $700 with WASH for the rifle.
   g. TFO Jacobo told WASH to count out the money at which time WASH handed the U.S. currency to FREEMAN who counted it out.
   h. FREEMAN handed WASH a set of baseball gloves and TFO Jacobo reacted to WASH'S action and backed up and told them "what you finna do." Freeman and WASH then said no, no and Freeman indicated it was to grab the ammo. WASH grabbed the ammunition and handed it to TFO Jacobo.
   i. Meanwhile, TFO Jacobo observed a large bulge on FREEMAN's right side which he believed may have been a pistol and a black semi-automatic pistol sitting on LEDBETTER's lap.

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000028   2/12/14

    j.   After counting the U.S. currency, FREEMAN told TFO Jacobo that he had only given him $700. TFO Jacobo then realized that he had given the suspects $100 less than they had agreed and provided them with $100 more.

    k.   TFO Jacobo told WASH to call him if he had anymore firearms to get rid of and the suspects departed the area at approximately 1:27 p.m.

    l.   TFO Jacobo and SA Sanchez left in the UC vehicle shortly thereafter and the operation was terminated.

8. Following the operation, SA Larsen took custody of the evidence and booked the following property into ATF custody:

    a.   U.S. Military M1 Carbine .30 caliber rifle, s/n AA27054

    b.   16 rounds of Lake City .30 caliber ammunition

    c.   Nylon rifle case and blanket used to conceal rifle

9. A query was conducted of the California Automated Firearms System (AFS) for the firearm with negative results.

ATF PROPERTY:

Electronic Surveillance E-1 – Phone calls between UC and WASH

Electronic Surveillance E-2 – Audio/video of firearms purchase from WASH

Electronic Surveillance E-3 – Surveillance video of firearms purchase from WASH

ATTACHMENTS:

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000029

# EXHIBIT C

**U.S. Department of Justice** **Report of Investigation**
Bureau of Alcohol, Tobacco, Firearms and Explosives

| Title of Investigation: WASH, Deandre Lamar et al. | Investigation Number: | Report Number: 3 |
|---|---|---|

## SUMMARY OF EVENT:

SURVEILLANCE: On February 6, 2014, ATF Special Agents (SA) and Task Force Officers (TFO) conducted surveillance of an undercover (UC) firearms purchase from Deandre WASH.

## NARRATIVE:

1. On February 6, 2014, an UC operation was initiated during which TFO Jacobo and SA Sanchez, acting in an UC capacity, would meet with WASH in an attempt to purchase a M1 rifle. The following personnel participated in the operation providing cover for the UCs and conducting surveillance of the meeting: Resident Agent in Charge (RAC) Darek Pleasants, SA Chris Bailey, SA Andrew Williams, TFO Vinny Johnson, TFO Roger Lee, SA Mike Ramos, TFO Ryan Cates, SA James Talley, SA Danny Demas, TFO Steve Light, SA Kristin Larsen, and Technical Surveillance Specialist (TSS) Joe Arietta.

2. TSS Arietta recorded video of the meeting. For further details see Electronic Surveillance Evidence E-3.

3. Prior to the UC vehicle's arrival, surveillance units placed themselves in the area of the Popeye's restaurant parking lot located at 3080 East 9th Street, Oakland, CA.

4. At approximately 1:20 p.m., the UC vehicle arrived in the lot and parked.

5. At approximately 1:25 p.m., SA Ramos and TFO Light observed a grey Toyota Avalon bearing California license plate 7COW797 occupied by 3 male Blacks park next to the UC vehicle. TFO Jacobo was then observed making contact with the suspect in the rear of the vehicle.

6. TFO Johnson observed the suspect in the rear of the vehicle pass what appeared to be a long gun wrapped in a blanket to TFO Jacobo. TFO Jacobo then passed it to SA Sanchez who placed the item in the trunk of the UC vehicle.

7. At approximately 1:27 p.m., all 3 suspects departed the location in the Toyota Avalon exiting the parking lot via East 9th Street. Shortly thereafter the UCs departed the area and the operation was terminated.

8. Following the operation, TFO Jacobo confirmed that the rear passenger of the Toyota Avalon was Deandre WASH.

9. TFO Light conducted a query of the California Department of Motor Vehicles (DMV) for license plate

| Prepared by: Christopher BAILEY | Title: Special Agent, Oakland Field Office | Signature: C. Bailey | Date: 2/9/14 |
|---|---|---|---|
| Authorized by: Darek G. Pleasants | Title: Resident Agent in Charge, Oakland Field Office | Signature: | Date: 2/9/14 |
| Second level reviewer (optional): Joseph M. Riehl | Title: Special Agent in Charge, San Francisco Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000030

7COW797. Results showed that the registered owner of the vehicle is Samuel FREEMAN at ▮▮▮▮▮
▮▮▮▮ Oakland, CA.

10. TFO Jacobo reviewed booking and DMV photographs of FREEMAN and identified him as the driver of the Toyota Avalon. SA Bailey conducted a criminal history query for FREEMAN and learned that he is a convicted felon with convictions for firearms and narcotics violations.

11. SA Bailey captured a still photograph of the front passenger of the Toyota Avalon from audio/video recorded during the firearms transaction (E-2) and provided it to Officer Omega Crumm of the Oakland Police Department (OPD). Officer Crumm advised that he believed the suspect to be Kenneth LEDBETTER and provided photographs of LEDBETTER.

12. TFO Jacobo reviewed the photographs of LEDBETTER and identified him as the front passenger of the Toyota Avalon. LEDBETTER is a juvenile.

ATTACHMENTS:
DMV printout for California license plate 7COW797
DMV photograph and criminal history abstract for FREEMAN
Photographs and identifiers for LEDBETTER provided by OPD Officer Crumm

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000031

# EXHIBIT D

**U.S. Department of Justice**            **Report of Investigation**
Bureau of Alcohol, Tobacco, Firearms and Explosives

| Title of Investigation: WASH, Deandre Lamar et al. | Investigation Number: | Report Number: 4 |
|---|---|---|

## SUMMARY OF EVENT:

PURCHASE: On February 11, 2014, ATF Task Force Officer (TFO) Ramon Jacobo and Special Agent (SA) Nathan Sanchez, acting in an undercover (UC) capacity, met with Deandre WASH to purchase a M1 carbine rifle, a Beretta 86 pistol, and a Intratec TEC-DC9 pistol.

## NARRATIVE:

1. On February 10, 2014 at approximately 8:00 p.m., TFO Jacobo placed a recorded phone call to WASH at phone number 415-577-9035. The phone call was not answered.

2. On February 11, 2014 at approximately 10:14 a.m., TFO Jacobo placed another recorded phone call to WASH. The following is a synopsis of the phone call:

    a. TFO Jacobo identified himself to WASH.
    b. WASH said "I got another M1" and "this little Tec."
    c. WASH said that the "Tec" was a little "rusty" and "for a mothafucka try and do something" "you might wanna clean it." TFO Jacobo understood this to mean that if someone were to use the firearm that they should clean it first.
    d. TFO Jacobo asked how much WASH wanted for the "other thing" (M1) and WASH responded "around the same price."
    e. TFO Jacobo then asked about the "Tec" and WASH stated "seven dollars," which TFO Jacobo understood to mean $700.
    f. WASH stated that the M1 was not his, but that he would call his partner and see if he could hook up a "package deal."

3. At approximately 1:00 p.m., TFO Jacobo placed a recorded phone call to WASH in response to a missed call from WASH. The following is a synopsis of the phone call:

    a. WASH stated "I came across a little 9 Beretta" and that it was "9-10 shot."
    b. WASH also verified that he still had the M1 and the Tec, but that the M1 did not have a magazine.
    c. WASH stated that it would be "14" for two. TFO Jacobo verified that this was $1,400 for the M1 and Tec. He further stated that it would be $2,100 for all three firearms.

| Prepared by: Ramon Jacobo | Title: Task Force Officer, Oakland Field Office | Signature: | Date: 2/12/14 |
|---|---|---|---|
| Authorized by: Darek G. Pleasants | Title: Resident Agent in Charge, Oakland Field Office | Signature: | Date: 2/14/14 |
| Second level reviewer (optional): Joseph M. Riehl | Title: Special Agent in Charge, San Francisco Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000033

4. At approximately 1:13 p.m., TFO Jacobo placed another recorded phone call to WASH. The following is a synopsis of the phone call:

   a. TFO Jacobo told WASH that he had "2" ($2,000) for all three firearms.
   b. WASH responded "let me call my nigga and see."

5. A short time later, TFO Jacobo received a phone call from WASH which he was able to record. The following is a synopsis of the phone call:

   a. The conversation was broken and then TFO Jacobo asked WASH "do you want me to do it or what?"
   b. WASH responded "yeah, 2. Just bring in 2."

6. For complete details regarding the phone conversations between TFO Jacobo and WASH referenced above, see Electronic Surveillance Evidence E-4.

7. Based on the information above, an UC operation was initiated during which TFO Jacobo and SA Sanchez, acting in an UC capacity, would meet with WASH in an attempt to purchase firearms. The following personnel participated in the operation providing cover for the UCs and conducting surveillance of the meeting: Resident Agent in Charge (RAC) Darek Pleasants, SA Chris Bailey, SA Andrew Williams, TFO Vinny Johnson, TFO Roger Lee, SA Mike Ramos, SA Sarah Mauricio, SA James Talley, SA Danny Demas, TFO Steve Light, SA Kristin Larsen, and Deputy U.S. Marshal Jason Price.

8. TFO Jacobo and the UC vehicle were equipped with audio/video recording devices and an audio transmitter by which the surveillance team could monitor the meeting. The following is a synopsis of the meeting. For complete details see Electronic Surveillance Evidence E-5.

   a. At approximately 2:49 p.m., TFO Jacobo placed a phone call to WASH which was captured on his recording device. During the call, WASH advised that he would be at the Popeye's parking lot in approximately 10 minutes.
   b. Shortly thereafter, TFO Jacobo and SA Sanchez traveled in the UC vehicle to the parking lot at 3080 East 9th Street, Oakland, CA.
   c. After waiting for some time, TFO Jacobo placed another recorded phone call to WASH. WASH advised that he was getting off the freeway.
   d. At approximately 3:20 p.m., the UCs departed the area momentarily before being contacted again by WASH.
   e. At approximately 3:28 p.m., the UCs again traveled to the target location.
   f. Upon driving in to the area, TFO Jacobo attention was drawn by a subject who was parked on the north side of the parking lot, and TFO Jacobo noticed WASH was in Nissan Sentra, and he was in vehicle by himself.
   g. TFO Jacobo and SA Sanchez drove next to WASH where TFO Jacobo made contact with WASH. WASH had a Tech 9, on his lap. TFO Jacobo asked WASH if that was it and WASH handed him the Tech 9. In addition WASH also showed him the safety feature on the gun. WASH then placed the gun in a plastic bag and retrieved a Berretta 9mm short, and showed it to TFO Jacobo. WASH placed both of the guns in a white plastic bag and handed them to SA Sanchez who placed them in the trunk of their car.
   h. TFO Jacobo asked WASH where is the other one, and WASH indicated it was In the rear seat. TFO Jacobo opened the rear driver's side door and saw a long object which was wrapped in a gray sweat

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000034



jacket. TFO Jacobo unwrapped the sweatshirt to the point he saw the muzzle of a rifle. TFO Jacobo took the sweat jacket and handed it to SA Sanchez who then placed it in their car. TFO Jacobo then told SA Sanchez to pay the man. SA Sanchez gave WASH $2000 in U.S. Currency.

   i. TFO Jacobo then waited for WASH to count the money. After WASH completed counting the money, WASH told TFO Jacobo if he needed a magazine for the M1 that he could get one. TFO Jacobo told WASH he was bringing him good business and they would talk later

   j. The UCs then returned to their vehicle and WASH departed the area in the Nissan Sentra.

   k. TFO Jacobo and SA Sanchez left in the UC vehicle at approximately 3:37 p.m. and the operation was terminated.

9. During the operation, surveillance units were able to observe the Nissan Sentra driven by WASH. The California license plate was determined to be 7BKG430. This license plate was later queried with the California Department of Motor Vehicles (DMV) and determined to be a rental vehicle.

10. Following the operation, SA Bailey took custody of the evidence.

11. A query was conducted of the California Automated Firearms System (AFS) for the firearms. The Beretta pistol showed a California Dealer Record of Sale (DROS) to Nicholas Colasvonno on January 29, 1990.

ATF PROPERTY:
Electronic Surveillance E-4 – Phone calls between UC and WASH
Electronic Surveillance E-5 – Audio/video of firearms purchase from WASH
Exhibit 4 - U.S. Military M1 Carbine .30 caliber rifle, s/n none
Exhibit 5 - Intratec TEC-DC9 9mm pistol, s/n obliterated
Exhibit 6 - Beretta 86 .380 caliber pistol, s/n D06724Y
Exhibit 7 – white plastic bag
Exhibit 8 – Grey Ecko sweatshirt

ATTACHMENTS:
AFS query results for serial number D06724Y

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000035

# EXHIBIT E

U.S. Department of Justice Case4:14-cr-00127-JSW Document60-1 Filed04/24/15 Page15 of 31
Bureau of Alcohol, Tobacco, Firearms and Explosives

Report of Investigation

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| WASH, Deandre Lamar et al. | | 7 |

## SUMMARY OF EVENT:

ARREST: On March 18, 2014, ATF Special Agents (SA) and Task Force Officers (TFO) arrested Deandre Lamar WASH pursuant to a federal arrest warrant.

## NARRATIVE:

1. On March 18, 2014, surveillance was established in the area of the Majestic Apartments located at ▮▮▮▮▮ Hayward, CA in an attempt to locate Deandre WASH for whom agents held a federal arrest warrant for violations of Title 18, United States Code 922(g)(1), felon in possession of a firearm.

2. The following personnel participated in the operation: SA Chris Bailey, SA Sarah Mauricio, SA Scott Dvorak, SA Andrew Williams, TFO Vinton Johnson, and TFO Steve Light.

3. Agents observed WASH's silver Nissan Sentra, bearing California license plate number 7BKG430, parked on Torrano just west of the apartment complex. This vehicle was seen driven by WASH during a previous firearms transaction and is a rental vehicle owned by Enterprise Rental Car, EAN Holdings LLC.

4. At approximately 9:45 a.m., TFO Johnson observed WASH exit the apartment complex and began walking towards the vehicle. As the arrest team moved in to affect the arrest, WASH entered and started his vehicle. Arrest team personnel exited their vehicle wearing fully visible police markings at which time WASH placed the vehicle into drive and accelerated quickly to flee the area. Due to a communication equipment malfunction, arrest team vehicles prepared to block WASH's vehicle in were unable to do so.

5. WASH accelerated recklessly around TFO Johnson's vehicle and fled eastbound on Torrano, to southbound Spring, and then to westbound Devon. Due to information regarding WASH's suspected involvement in gang shootings and intimidation using firearms, as well as WASH's sales of firearms to an ATF undercover agent, agents pursued WASH at a distance in order to keep him within sight.

6. WASH continued to flee in his vehicle northbound on Mission Boulevard against oncoming traffic. Agents activated "Code 3" police lights and sirens to negotiate traffic as they followed WASH northbound in the correct direction of traffic at an approximate rate of speed of 40-50 miles per hour (Speed Limit = 40mph)

7. WASH then turned westbound on Berry Avenue which is not a through street. As agents arrived at the end of the street they observed WASH's vehicle, still running, with the driver's door open, on the curb with broken water piping beneath it. TFO Light located WASH fleeing on foot southbound along the train tracks adjacent to

| Prepared by:<br>Christopher BAILEY | Title:<br>Special Agent, Oakland Field Office | Signature:<br>L. Bailey | Date:<br>3/18/14 |
|---|---|---|---|
| Authorized by:<br>Darek G. Pleasants | Title:<br>Resident Agent in Charge, Oakland Field Office | Signature:<br>DGPL | Date:<br>3/20/14 |
| Second level reviewer (optional):<br>Joseph M. Riehl | Title:<br>Special Agent in Charge, San Francisco Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000041

625 Berry Avenue and out of sight.

8. Agents then attempted to locate WASH one block south with no success. While returning to the area of the Majestic Apartments, SA Dvorak and SA Williams observed WASH walking northbound on Mission Boulevard. Agents were able to take WASH into custody with no further incident.

9. After taking WASH into custody, agents returned to WASH's vehicle. SA Mauricio, SA Williams, and SA Dvorak searched the vehicle and recovered approximately 39.9 gross grams of marijuana, WASH's cellular phone, an Enterprise Rental Car agreement in the name "Ella Hanson," and indicia in the name "Deandre Wash." Ella Hanson is WASH's grandmother. All evidence was photographed and transported to the Oakland Field Office by SA Mauricio where the items were booked into ATF custody by SA James Talley.

10. SA Bailey contacted the Hayward Police Department (HPD) and advised them of the vehicle accident. HPD Officer Nunes responded to the location to take an accident report, number 2014-20679. The Alameda County Fire Department also responded and shut off the water being released from pipes broken by WASH's vehicle.

11. SA Bailey parked and secured the rental vehicle on Berry Avenue and contacted Enterprise Rental Car. The Enterprise Rental Car representative advised that they would send someone to pick the vehicle up.

ATF PROPERTY:
Exhibit 12 – 39.9 gross grams of marijuana
Exhibit 13 – Apple iPhone 5
Exhibit 14 – Enterprise Rental Car Agreement
Exhibit 15 – District Court of Honolulu paperwork

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000042

# EXHIBIT F

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Report of Investigation**

| Title of Investigation: WASH, Deandre Lamar et al. | Investigation Number: | Report Number: 8 |
|---|---|---|

## SUMMARY OF EVENT:

Contact Interview: On March 18th, 2014 DeAndre WASH was arrested during the execution of an Arrest Warrant in his name. Following his arrest, Special Agent (SA) Christopher Bailey and SA Andrew Williams with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) conducted an interview of WASH.

## NARRATIVE:

1. On March 18, 2014, SA Bailey and SA Williams conducted an interview of WASH, in custody, at the ATF Oakland Field Office.

2. SA Bailey read WASH his Advice of Rights and Waiver from ATF Form 3200.4. At this point, WASH had no objection to speaking with agents and signed ATF Form 3200.4 (See attached)

3. SA Bailey informed WASH that ATF held an Arrest Warrant in his name subsequent to an ATF investigation regarding WASH selling/possessing firearms. WASH told SA Bailey that he did not know anything about any firearms and had no idea why he was wanted by ATF agents. WASH then stated that he did not have any information about anyone else that sells firearms. WASH said that he just wanted to know what his charges were and a short time after the interview was concluded.

4. An audio recording of the interview was taken by SA Williams, which was booked into evidence as E-6.

5. While transporting WASH to the Santa Rita Alameda County Jail for holding, he stated to agents that he was aware the police were behind him when he got in his car and he deliberately tried to get away. He said that he didn't want to get caught and that he would do it again if he was chased by the police in the future.

## Attachments:

- ATF Form 3200.4, Advice of Rights Waiver signed by WASH

| Prepared by Andrew D. Williams | Title: Special Agent, Oakland Field Office | Signature: A. Williams | Date: 3/20/14 |
|---|---|---|---|
| Authorized by: Darek G. Pleasants | Title: Resident Agent in Charge, Oakland Field Office | Signature: DGPL | Date: 3/20/14 |
| Second level reviewer (optional): Joseph M. Riehl | Title: Special Agent in Charge, San Francisco Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000043



ATF EF 3120.2 (10-2004)
For Official Use Only

DLW-000044

# EXHIBIT G

# SUPERIOR COURT OF CALIFORNIA

## County of Alameda



> **COURT ORDER\***
> Electronic Communication Records
> (Phone ◆ E-Mail ◆ Internet)

**TO:** Sprint Nextel Legal Compliance, 6480 Sprint Parkway, 2nd Floor, Overland Park, Ks 66251, hereinafter "Provider"

**Type of service provided:** ☒ Telephone    ☐ E-mail    ☐ Internet

**APPLICANT:** Officer Omega Crum, Oakland Police Department, hereinafter "Applicant."

## SUBSCRIBER: (415) 577-9035

**ORDER:** Officer Omega Crum, a Police with the Oakland Police Department, has made application to this court for an order authorizing the installation and use of a pen register and trap and trace device on telephone number **(415) 577-9035** service provider Sprint PCS, as subscribed to by an unknown person(s) and addresses.

This court finds that the information likely to be gained by such installation and use is relevant and material to an ongoing criminal investigation regarding violation of Possession of a firearm by a felon **29800(a) (1) P/C.**

Pursuant to 18 United States Code Section 2703 (c) (d), 3122, 3123 IT IS

HEREBY ORDERED that Sprint PCS, AT&T Wireless Services, Metro PCS, Nextel Communications, Cellco Partner DBA Verizon Wireless, Cricket Communications, Cingular Wireless, MCI Worldcomm, Sure West Wireless, T-Mobile, Voice Stream Wireless, Citizens Utilities, Pacific Bell Telephone Company, SBC Communications and any other affected telecommunication companies, subsidiaries, or entities, whether mentioned herein or not, (hereinafter referred to as the Telecommunications Companies), upon request of the Federal Bureau of Investigation (FBI) and the Oakland Police Department, shall provide the following information and services without delay: installation and use of pen register, to register numbers dialed or pulsed from the Target Telephone number **(415) 577-9035,** to record the date and time of such dialing or pulsing, to record the length of the time the telephone receiver is off the hook for incoming or outgoing calls, and to receive cell site and/or location sites, for a period of thirty (30) days from date of this order.

IT IS HEREBY ORDERED that Officer Omega Crum and other law enforcement officials working with him may install and use trap and trace devices on the Target Telephones to record the incoming and outgoing telephone numbers calling the Target Telephones, for a period of **thirty (30) days** from date of this order.

IT IS HEREBY ORDERED that Sprint PCS, shall furnish information, facilities and technical assistance necessary to accomplish the installation and operation of the devices unobtrusively and with a minimum of disruption to normal telephone service.

IT IS HEREBY ORDERED that the pen register and trap and trace devices on the Target Telephones are authorized to continue in spite of the fact that the particular telephone number or subscriber information may change, as long as either the number or the subscriber information on the account remains the same and law enforcement believes that the person(s) using the Target Telephones continue to be the same. Further, it is ordered that the affected telephone company notifies Officer Omega Crum regarding any changes to the Target Telephones, including number or subscriber changes.

IT IS FURTHER ORDERED that "the wireless carriers", pursuant to specific and articulable facts, shall provide, on an ongoing and/or real-time basis, the location of cell site/sector (physical address) at call origination (for outbound calls), call termination (for incoming calls), and, during the progress of a call, the direction and strength of a signal for telephone number **(415) 577-9035** including local and "roam" mode cellular telephone calls, historical data including incoming or

1

DLW-000127

outgoing calls, and subscriber information for the telephone number's beginning date and continuing for thirty (30) days from the date this order is issued.

IT IS HEREBY ORDERED that this authorization for the installation and use of a pen register and trap and trace device, including the "caller identification feature" applies not only to the telephone number listed above for **(415) 577-9035,** but also to any changed telephone number(s) subsequently assigned to the same instrument as **(415) 577-9035** within the thirty (30) day period authorized by this order.

IT IS FURTHER ORDERED that pursuant to Title 18 United States Code Section 2703(c) (d), 3122 and 3123 and pursuant to CA Penal Code section 629.90 and 629.91, that the local, long distance and wireless carriers shall furnish officers of the Oakland Police Department and agents of the FBI, forthwith all information, including, but not limited to, telephone subscriber information, facilities and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device (including the "caller identification feature"), and do so unobtrusively and with minimum interference with the services that are accorded the persons whose dialing or transmissions are the subject of the pen register and trap and trace device.

IT IS HEREBY ORDERED that Sprint PCS, be compensated for reasonable expenses incurred while complying with this court order.

IT IS HEREBY ORDERED that Sprint PCS, Nextel Communications, Cricket Communications, Cingular Wireless, MCI Worldcomm, Sure West Wireless, T-Mobile, Voice Stream Wireless, Citizens Utilities, Pacific Bell Telephone Company, SBC Communications and any other affected telecommunication companies, subsidiaries, or entities, whether mentioned herein or not, (hereinafter referred to as the Telecommunications Companies) shall supply any and all information in their files with respect to the persons called by the Target Telephones and for the persons calling the Target Telephones (except the contents of communications), whether published or non-published, including but not limited to the location of cell site/sector (physical address) of call termination without geographical limits, call initiation and call progress locations (Automated Message Accounting Data), raw data information, subscriber names and addresses, credit information, application information, toll records (to include all outgoing and incoming calls), cell site locations and billing information and unbilled records, upon oral or written demand of the Oakland Police Department and FBI.

IT IS HEREBY ORDERED that pursuant to probable cause Sprint PCS assist in the attempt to locate said telephone by the use of GPS coordinates, and provide text message content if applicable.

IT IS HEREBY ORDERED that Sprint PCS provide call detailed records with cell site/sector information for said telephone number for two weeks prior to signing of this court order. All Subscriber information to include location of purchase of said telephone, method of payments and IMSI, MZ and IMEI numbers belonging to the Target Telephone.

IT IS HEREBY ORDERED that this order by the court states that the telecommunications companies shall not disclose the existence of the pen register, the trap and trace device or the existence of the investigation to the listed subscriber or to any other person, unless or until otherwise ordered by the court.

Based on the findings below, Provider is ordered to furnish Applicant with the following records if they are in Provider's possession or if they can be obtained with reasonable effort:
**Subscriber records**
    ☒Subscriber's name and address           ☒Types of services utilized
    ☒Telephone number, e-mail address, IP address     ☒Length of service, including start date
    ☒Means and source of payment, including credit card and bank account numbers

**Connection records**
    **Telephone**
        ☒ **Local and long distance connection records, incoming and outgoing text messages with content**
            **from <u>October 4, 2013 to February 11, 2013</u>**
        ☒ Locations, dates, and times of cell tower contacts.
        ☒ Last outgoing phone number     ☒Last incoming phone number

2

DLW-000128

**E-mail and Internet**

☐ E-mail or IP address of the person or computer contacted, session times, and duration of sessions
from _____ to _____

**COMPLIANCE DATE**: Provider shall furnish the listed records to Applicant ASAP.

**COMPENSATION**: Applicant's agency shall compensate Provider for reasonable expenses in complying with this order.

**NON-DISCLOSURE ORDER**: Provider shall not notify Subscriber or any other person of the existence or content of this order as follows: ☐ Until 90 days from the date of this order. ☒ Until further order of this court.

**FINDINGS**

(1) Provider is an electronic communication service company as defined in 18 USC § 2510(15) and is doing business in California.

(2) Pursuant to 18 USC §§ 2703(c)(1)(B), 2703(c), and 2703(d), this court may order a provider of an electronic communication service doing business in California to disclose the records listed above to an officer who has established reasonable grounds to believe said records are relevant and material to an ongoing criminal investigation.

(3) Applicant has filed with this court a declaration containing specific and articulable facts establishing reasonable grounds to believe the listed records are relevant and material to an ongoing criminal investigation.

(4) Applicant's declaration has established grounds for a non-disclosure order pursuant to 18 USC § 2705(b). Grounds for nondisclosure are based on the following: [check one or more]

☒ Danger to life or safety      ☒ Flight from prosecution      ☒ Jeopardize an investigation
☒ Evidence destruction or tampering      ☒ Intimidation of potential witnesses

_2/11/14_
Date

_____
Judge of the Superior Court

\* Application must be attached
18 USC § 2703(d)

3

DLW-000129

# SUPERIOR COURT OF CALIFORNIA

## County of Alameda



| **Application for Court Order** |
| :---: |
| Electronic Communication Records |
| (Phone ◆ E-Mail ◆ Internet) |

**Provider**: Sprint Nextel Legal Compliance, 6480 Sprint Parkway, 2nd Floor, Overland Park, Ks 66251, hereinafter "Provider"

**Type of service provided**: ☒ Telephone ☐ E-mail ☐ Internet

**Target information** (if known)

Name and address:

Phone number: **(415) 577-9035**          E-mail address:

Internet protocol (IP) address, and the date and time of contact (if known):

**Jurisdiction**: Provider is an electronic communication service provider as defined in 18 USC § 2510(15) and is doing business in California.

**Applicant:** Officer Omega Crum, Oakland Police Department, hereinafter "Affiant."

**Certification**: Per 18 USC § 2703(d), I certify that records that are likely to be obtained pursuant to this Order are relevant to an ongoing criminal investigation being conducted by the above law enforcement agency. This certification is based on the following information:

Your affiant is a Police Officer with the City of Oakland and has been a sworn member of this department since December, 2000. Since February 5, 2012 I have been assigned as the Oakland Police Department's Bureau of Field Operations One Intel Officer. Prior to my current assignment I was assigned to the Oakland Police Department's Target Enforcement Task Force (TETF) from 2005 to 2012. Prior to my current duty as a member of TETF, I was assigned to the Oakland Police Department's Crime Reduction Team 6 (CRT6) from 2002 to 2005. During my duration at the Oakland Police Department I have written several search warrant/court orders involving the use and tracking of electronic equipment, i.e. hard line telephones, cellular telephones and computers. The information obtained from these warrants/court orders resulted in the arrest of felony warrant suspects, all wanted for violent crimes. I know from experience that most criminals will always keep in contact with family members, associates and partners of crime by use of cellular telephones and occasionally computers.

The Oakland Police Department is currently investigating the Oakland Street Gang called "Hungry Gang". Within the last several months the "Hungry Gang" has been responsible for multiple shootings in the North Oakland area.

On October 4th, 2013, ⬛⬛⬛ a member of the "Hungry Gang" gets shot while seated inside of Cats Barber shop. The suspect was described as a MB, 19 -24 years old, thin build wearing a stripped hoodie pulled over his head. The suspect was seen running on 59th St and subsequently got into the suspect vehicle described as a possible blk Toyota, 4D with shiny gold letters on it. The suspect is believed to have been ⬛⬛⬛ a rival gang member from the 55th and Gaskill area in his girlfriends, ⬛⬛⬛ black Toyota, Camry.

On October 15th, 2013, ⬛⬛⬛ who resides at ⬛⬛⬛ and is affiliated with the "Hungry Gang "was shot at. Officers responded to ⬛⬛⬛ after receiving calls of gunshots in the area. Officers met with ⬛⬛⬛ who told them that she saw a MB light skinned arguing with her sister ⬛⬛⬛. The MB pulled out a black gun and began to shoot inside her house located at ⬛⬛⬛ The MB was identified as an "⬛⬛⬛".

4

_____ resides at _____ and is the girlfriend of _____. and_____ are affiliated with "Hungry Gang".

On October 22, 2013, Officers were dispatched to 63rd St & Herzog St to investigate a report of gunshots being fired in the area. Information was received that the occupants of two vehicles were shooting at each other. The vehicles were described as possibly a 2000, Pontiac Grand Am, 4door, silver and an unk white vehicle. The area of 63rd & Herzog is a known "Hungry Gang" hangout and the probation address (_____) for Deandre Wash one of the leaders of the gang.

On January 15, 2014,_____ who associates with_____ and "Hungry Gang" and resides at_____ walks into the Uptown Market (5635 Shattuck Ave). As ____ is inside of the Uptown Market,_____ drives up in a vehicle with_____ as the right front passenger. Both exit the vehicle and enter the Uptown Market. _____ leaves the store. ____ and ____ exit the Market and enter their vehicle. As soon as they enter their vehicle two MB suspects approach the driver's side and passenger side of the vehicle and instantly discharge several rounds at the vehicle. The suspects then fled W/B on Aileen St. on foot as ____ and ____ exit their vehicle armed and pursue the suspects who shot at them, discharging several rounds. The suspects who they were chasing ran S/B on to Dover St where at least one of the suspects ran into the driveway/yard of_____ At this location, ____ and ____ discharge several more rounds. A witness at this location gave statements that the person he saw being shot at in his driveway was his neighbor '_____'. A gray four door vehicle with its rear window shattered and a flat tire was seen fleeing the area. This vehicle was identified as the vehicle that ____ and ____ initially drive up in at the Uptown Market. _____ makes" inconsistent statements" to investigators as to how the events transpired on this date. At the scene, .40 caliber casings, .45 caliber casings and 9mm casings were recovered. Ballistics confirmed that the .40 caliber casings were linked to four separate shootings in the city of Stockton and to Oakland.

On January 22, 2014, an ATF confidential informant ("CI") provided agents with information that Wash and two other male Blacks from the "Hungry Gang" were driving around with firearms looking for the friends/family of ____ who was in custody. Wash was identified as being on felony probation for firearms and narcotics violations.

On February 5, 2014, the CI provided agents the cell phone number of Wash and advised that Wash had a firearm which he wished to sell. ATF Task Force Officer Ramon Jacobo, acting in an UC capacity, had several recorded phone calls with Wash. During the phone calls, Wash advised TFO Jacobo that he had a "M1" rifle for sale which he wanted $800 for. TFO Jacobo and Wash agreed to meet the following day to conduct the transaction.

On February 6, 2014, TFO Jacobo calls Wash in order to arrange a meeting and the sale of the M1 rifle. On that same date, TFO Jacobo, met with Wash. During the meeting, Wash provided TFO Jacobo with the M1 Carbine rifle along with sixteen (16) rounds of .30 caliber ammunition in exchange for $800.

I believe that the installation of the above equipment and the retrieval of the above information will assist the Oakland Department in their attempt to locate the suspect's whereabouts and firearms. Wherefore, your Affiant requests that a court order be issued upon the above facts.

(1) Disclosure of this application and court order would jeopardize the investigation and/or allow the suspect an opportunity to conceal or destroy evidence.

**Declaration:** I declare under penalty of perjury that the foregoing is true and correct.

2/11/14

Date

_____
Judge of the Superior Court

2-11-14

Date

8413P

_____
Applicant

18 USC § 2703(d)

5

DLW-000131

# EXHIBIT H

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

### for the

### Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. **4 - 1 4 - 7 0 3 2 5** |
| Deandre Lamar WASH, | ) | |
| | ) | **OAKLAND VENUE** |
| _____ | ) | **FILED UNDER SEAL** |
| _Defendant_ | ) | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_     Deandre Lamar WASH                                               ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint

☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:
    Felon in possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g)(1).

Date:   3/10/14                                                          _____
                                                                              _Issuing officer's signature_

City and state:    Oakland, California                             Hon. Donna M. Ryu
                                                                              _Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____, and the person was arrested on _(date)_ _____ at _(city and state)_ _____ . |
| Date: _____                                                _____<br>                                                                    _Arresting officer's signature_<br><br>                                                                    _Printed name and title_ |

DLW-000060

# EXHIBIT I

GPS data.txt

From:     lsite-noreply@sprint.com
Sent:     Tuesday, February 11, 2014 9:23 PM
To:       Bailey, Christopher E.
Subject:          L-Site #162747869

Wash 02/11 23:18 S 37.635369 -122.085301 (734.00)
http://maps.google.com/?q=37.635369%20-122.085301


From:     lsite-noreply@sprint.com
Sent:     Tuesday, February 11, 2014 9:01 PM
To:       Bailey, Christopher E.
Subject:          L-Site #162746625

Wash 02/11 22:57 S 37.646243 -122.086525 (749.00)
http://maps.google.com/?q=37.646243%20-122.086525


From:     lsite-noreply@sprint.com
Sent:     Tuesday, February 11, 2014 8:40 PM
To:       Bailey, Christopher E.
Subject:          L-Site #162745377

Wash 02/11 22:36 S 37.646243 -122.086525 (749.00)
http://maps.google.com/?q=37.646243%20-122.086525


From:     lsite-noreply@sprint.com
Sent:     Tuesday, February 11, 2014 8:19 PM
To:       Bailey, Christopher E.
Subject:          L-Site #162744135

Wash 02/11 22:15 S 37.646243 -122.086525 (749.00)
http://maps.google.com/?q=37.646243%20-122.086525


From:     lsite-noreply@sprint.com
Sent:     Tuesday, February 11, 2014 7:59 PM
To:       Bailey, Christopher E.
Subject:          L-Site #162742889

Wash 02/11 21:54 S 37.635369 -122.085301 (734.00)
http://maps.google.com/?q=37.635369%20-122.085301


From:     lsite-noreply@sprint.com
Sent:     Tuesday, February 11, 2014 7:39 PM
To:       Bailey, Christopher E.
Subject:          L-Site #162741658

 02/11 21:34 S 37.635369 -122.085301 (734.00)
http://maps.google.com/?q=37.635369%20-122.085301

DLW-000452

# EXHIBIT J

GPS data.txt

From:     lsite-noreply@sprint.com
Sent:     Tuesday, March 18, 2014 5:05 AM
To:       Bailey, Christopher E.
Subject:          L-Site #165677865

Wash #2 03/18 07:01 S 37.662136 -122.067163 (904.00)
http://maps.google.com/?q=37.662136%20-122.067163


From:     lsite-noreply@sprint.com
Sent:     Tuesday, March 18, 2014 4:43 AM
To:       Bailey, Christopher E.
Subject:          L-Site #165676492

Wash #2 03/18 06:38 S 37.662136 -122.067163 (904.00)
http://maps.google.com/?q=37.662136%20-122.067163


From:     lsite-noreply@sprint.com
Sent:     Tuesday, March 18, 2014 4:20 AM
To:       Bailey, Christopher E.
Subject:          L-Site #165675149

Wash #2 03/18 06:16 S 37.662136 -122.067163 (904.00)
http://maps.google.com/?q=37.662136%20-122.067163


From:     lsite-noreply@sprint.com
Sent:     Tuesday, March 18, 2014 3:58 AM
To:       Bailey, Christopher E.
Subject:          L-Site #165673801

Wash #2 03/18 05:54 S 37.662136 -122.067163 (904.00)
http://maps.google.com/?q=37.662136%20-122.067163


From:     lsite-noreply@sprint.com
Sent:     Tuesday, March 18, 2014 3:36 AM
To:       Bailey, Christopher E.
Subject:          L-Site #165672430

Wash #2 03/18 05:31 S 37.662136 -122.067163 (904.00)
http://maps.google.com/?q=37.662136%20-122.067163


From:     lsite-noreply@sprint.com
Sent:     Tuesday, March 18, 2014 3:14 AM
To:       Bailey, Christopher E.
Subject:          L-Site #165671092

Wash #2 03/18 05:09 S 37.662136 -122.067163 (904.00)
http://maps.google.com/?q=37.662136%20-122.067163


From:     lsite-noreply@sprint.com
Sent:     Tuesday, March 18, 2014 2:51 AM
To:       Bailey, Christopher E.
Subject:          L-Site #165669743

Wash #2 03/18 04:47 S 37.662136 -122.067163 (904.00)
http://maps.google.com/?q=37.662136%20-122.067163
                              Page 5

DLW-000136